[Civ. No. 25247. Second Dist., Div. Three. Feb. 1, 1962.]

P. D. SMITH, Plaintiff and Respondent, v. IRVING E. HERMANN et al., Defendants and Appellants.

Keatinge & Older and Charles H. Older for Defendants and Appellants.

N. E. Youngblood for Plaintiff and Respondent.

FRAMPTON, J. pro tem.* — Defendants and cross-complainants appeal from that portion of the judgment entered against them wherein the sum of $2,500 and costs was awarded to plaintiff and cross-defendant for attorneys' fees in prosecuting the action below. The action was in declaratory relief to have it determined that defendants and cross-complainants were obligated to pay a sales or use tax levied by the State

---

*Assigned by Chairman of Judicial Council.

Board of Equalization against plaintiff arising out of the sale of an aircraft by plaintiff to defendants. They also appeal from that portion of the judgment wherein the court denied recovery of attorneys' fees and costs to the defendants and cross-complainants.

The factual background surrounding the controversy may be summarized as follows: On September 13, 1955, at Medford, Oregon, plaintiff leased to defendants a Douglas C-54B aircraft. The lease contained an option to purchase. On November 1, 1955, plaintiff assigned all of his right, title and interest in the aircraft and the lease to cross-defendant P. D. Smith, Inc. On April 14, 1956, pursuant to the option contained in the lease, P. D. Smith, Inc., sold the aircraft to defendants under a conditional sales contract, the terms of which provided that defendants were to pay a balance of $507,500 in monthly installments of $14,500. The contract further provided that in addition to the purchase price defendants would pay any sales or use tax imposed by reason of said sale to, or use by, defendants, and that defendants would indemnify and hold plaintiff harmless from paying such sales or use tax; that title to said aircraft would not pass with delivery of possession but shall remain in plaintiff until such time as the entire purchase price and all other sums due under said contract are paid by defendants; that in the event of default by the defendants in the performance of any covenant or agreement contained in said contract, which default should continue unremedied for 15 days after written notice to defendants, plaintiff could, at his option and without notice to defendants, retake possession of said aircraft and declare all of defendants' rights under said contract to be terminated and retain all moneys paid thereon for the reasonable use of said aircraft; that in the event of any suit by plaintiff to enforce any of his rights under said contract or to collect any amount due thereunder, that plaintiff would be entitled to recover reasonable attorneys' fees in addition thereto.

The conditional contract was recorded with the Civil Aeronautics Authority in Washington, D. C., and was considered a cloud on the title to the aircraft which would remain until the recordation of a release, to be executed on behalf of the seller. The contract further provided that: ''Upon the payment to Seller of the balance of the purchase price of the Aircraft together with all other amounts owing to Seller hereunder, Seller shall deliver to Buyer at such place in the United States as Buyer may designate (1) a bill of sale duly

vesting in BUYER the title to the Aircraft free and clear of all liens, claims, charges and encumbrances attaching prior to or subsequent to the delivery of the Aircraft to SELLER arising from any act or omission of SELLER, or any event over which SELLER has or had reasonable control, and (2) such other appropriate documents of title with respect thereto as BUYER may reasonably require.''

Paragraph 11 of the conditional sales contract provided in part that: ''BUYER agrees that it will pay and discharge all taxes . . . which if unpaid might become a lien . . . upon or against the Aircraft; and upon the failure of BUYER so to do, SELLER may make any such payment; provided, however, that nothing herein contained shall require BUYER to pay such tax . . . so long as BUYER shall in good faith contest the validity thereof and shall furnish SELLER such bond or indemnity as SELLER shall require, unless, in the judgment of SELLER, forfeiture is likely to result from any such failure to pay.''

On May 12, 1959, before the action was commenced, cross-defendant P. D. Smith, Inc., assigned to plaintiff the claim upon which the action was brought.

The last installment payment of $14,500 due under the conditional contract of sale was made on or about February 13, 1959.

On or about October 7, 1958, plaintiff received ''Notice of Determination Sales and Use Tax'' from the State Board of Equalization showing tax in the amount of $18,900 plus interest of $3,402 due. This tax was levied against plaintiff P. D. Smith, and was predicated upon the transaction wherein the aircraft was transferred by plaintiff to defendants. The State Board of Equalization treated such transaction as a sale. On October 16, 1958, plaintiff sent the notice of determination to defendants with a letter stating that the tax had been levied on the sale of the aircraft; that defendants were responsible for the payment thereof under paragraph 10 of the conditional sales contract, and demanded that defendants pay the tax immediately. On October 28, 1958, defendants, by letter addressed to plaintiff, denied liability for the tax; asserted that liability therefor rested upon plaintiff; urged plaintiff to take action to test the validity of the tax; asserted that if plaintiff failed to take proper action, defendants would hold him responsible in damages under appropriate provisions of the contract of sale. Again on February 2, 1959, plaintiff

made demand upon defendants to pay the tax and stated further that if defendants failed to discharge their obligation, it would leave plaintiff ''no choice but to proceed with litigation on the subject or pursue other rights, such as repossession of the aircraft, as provided in the contract.'' In the meantime, plaintiff had filed a petition for redetermination of the tax, and hearing was had thereon which resulted in an assessment of $21,870. The notice of redetermination bore the date April 30, 1959; required payment of the tax on or before May 30, 1959, in order to avoid penalty, and the levy became final 30 days after service thereof on the plaintiff. (Rev. & Tax Code, § 6564.)

On April 13, 1959, defendants again through their counsel denied liability for the payment of the tax. At this meeting plaintiff offered defendants the opportunity to represent plaintiff before the State Board of Equalization on the petition for redetermination if defendants would assume full responsibility under the terms of the contract for any tax finally levied upon the transfer of the aircraft. This offer was not accepted. On May 2, 1959, plaintiff sent a copy of the notice of redetermination to defendants with written demand that they pay the tax within 15 days or plaintiff would treat their refusal to pay as a breach of the conditional sales contract. This demand was rejected by defendants on May 5, 1959. Upon learning of the decision of the State Board of Equalization upon redetermination, the defendants on May 4, 1959, petitioned the State Board of Equalization for a rehearing on plaintiff's petition for redetermination. Such rehearing was denied on May 20, 1959, with the advice from the State Board of Equalization to defendants that the tax be paid; that a claim for refund be filed, and under such circumstances the board had indicated its willingness to grant a hearing on the claim for refund.

Again on May 11, 1959, plaintiff's counsel, by letter to defendants' counsel, reiterated his position as to defendants' liability for the payment of the tax and asserted that defendants were in violation of the conditional contract of sale for the failure to pay such tax after 15 days' notice of default in that respect. On May 27, 1959, plaintiff filed his action in declaratory relief in which he sought to have it determined, amongst other things, that defendants were obligated to pay the tax levied in connection with their purchase of the plane. On May 28, 1959, defendants, without previous notice to plaintiff, paid the tax. On the same date defendants by

letter requested plaintiff to execute an assignment of any refund of such tax, and suggested the dismissal of plaintiff's action on the grounds that the issues therein were moot because of the payment of the tax by defendants. On June 1, 1959, defendants asked for a release of the aircraft which could be recorded with the Civil Aeronautics Authority in Washington, D.C., which was given. On June 11, 1959, defendants filed their answer to plaintiff's complaint and a cross-complaint in which they in substance denied that the tax was levied upon the sale of the aircraft; asserted that in any event there is no liability on defendants to pay the tax or reimburse plaintiff for said tax. In their cross-complaint they alleged that plaintiff had breached the conditional contract of sale by his failure to present material facts to the State Board of Equalization bearing upon the transfer of the aircraft upon which the tax was levied to their damage in the sum of $21,870. They allege further that under the provisions of paragraph 11 of the conditional sales contract they were not obligated to pay the tax prior to the time they did pay it (May 28, 1959) for the reason that they were contesting, in good faith, the validity of said tax. They sought a declaratory judgment as to their rights under the contract; damages for $21,870; refund to them of any taxes which might be granted by the State Board of Equalization, and reasonable attorneys' fees.

The court found that defendants' rejection of plaintiff's demand for payment of the tax constituted a repudiation and anticipatory breach of defendants' contractual obligation, and that plaintiff had no notice or knowledge of defendants' intention to pay the tax until after it was in fact paid. The court also found against cross-complainants on their second cause of action wherein they alleged that plaintiff had breached an express contract whereby he had agreed to notify defendants of the time and place of the hearing on redetermination; that his failure to notify them, as agreed, had resulted in defendants' nonappearance at the time and place of said hearing; that plaintiff at said hearing deliberately failed to disclose material facts to the Board of Equalization concerning the transaction between the parties which, if disclosed, would have influenced the decision of the board favorably to defendants, all to their damage in the sum of $21,870.

The contract for the sale of the aircraft was bilateral. ██ " 'A unilateral contract is one in which no promisor receives a promise as consideration for his promise. A bilateral contract is one in which there are mutual promises

between two parties to the contract; each party being both a promisor and a promisee.' '' (*Davis* v. *Jacoby,* 1 Cal.2d 370 [34 P.2d 1026], at p. 378.) Under the terms of the contract it was the obligation and duty of defendants to pay the tax levied by the State Board of Equalization upon the transfer of the aircraft, and to hold plaintiff harmless therefrom. When the defendants had performed such duty, it became the obligation of plaintiff to execute and deliver to defendants a bill of sale vesting title in the aircraft in defendants, also to furnish such other appropriate documents of title as the defendants might reasonably require. One such document was the release to be executed by plaintiff and which would be recorded with the Civil Aeronautics Authority in Washington, D.C., where the conditional contract of sale had been recorded.

Had the tax not been paid it could have become a lien on all real property then owned by plaintiff, or afterwards and before the lien expired, acquired by him. (Rev. & Tax. Code, § 6757.)

The defendants' attitude at all times until after the filing of plaintiff's action was that they were not liable for the tax and that the obligation to pay it rested upon plaintiff. They declined to accept plaintiff's offer for them to appear and prosecute the petition for redetermination. They paid the tax two days before the expiration of the time fixed for payment in the notice of redetermination, without notice to plaintiff of their intention to pay.

Appellants urge that ''they were under no obligation whatever to pay the tax until the determination became final,'' (May 30, 1959), citing paragraph 11 of the contract, *supra*. ▉ Implicit in this paragraph is the admission of liability, as between plaintiff and defendants, for the payment of the tax ultimately found due. Defendants, instead of admitting such liability, took the stand that they were not liable for such tax and that liability therefor rested upon plaintiff. It was not until after plaintiff filed his action seeking a declaration of his rights that defendants informed him of their secret intention to pay the tax and to file a petition for refund. Had defendants admitted liability and proceeded to protect plaintiff as provided (paragraph 11, *supra*) in the contract, the latter would have had no reason to file his action below. Under these circumstances plaintiff had the right to treat defendants' conduct as an anticipatory breach of the contract and there was ample evidence to support the findings and judgment in favor of plaintiff.

The defendants urge that they are entitled to a judgment awarding them reasonable attorneys' fees pursuant to paragraph 21 of the conditional sale agreement, which incorporates paragraph 16 (g) of the lease wherein it provides that ''Lessor shall pay to Lessee any expenses incurred by Lessee in enforcing or protecting its rights herein, including reasonable attorneys' fees.'' Defendants claim that in prosecuting their cross-complaint they were ''enforcing or protecting'' their rights under the conditional sales agreement, and that they were awarded a judgment providing for the payment of any refund of the tax by the Board of Equalization directly to defendants, as prayed for in their cross-complaint.

The principal objective of the cross-complaint was to impose upon plaintiff and cross-defendants the liability for the payment of the sales tax, and inasmuch as defendants and cross-complainants had paid it, they prayed for judgment against plaintiff and cross-defendants in the sum of $21,870. ■ Attorneys' fees, where there is a provision for such under a contract, are awarded to the successful party as in the nature of special damages. (13 Cal.Jur.2d, Costs, § 36, p. 259; *Cirimele* v. *Shinazy*, 124 Cal.App.2d 46 [268 P.2d 210], at 52.)

■ The trial court concluded that cross-complainants ''shall take nothing by reason of said cross-complaint, except that: When, as, and if the State Board of Equalization grants any refund in this matter of said tax and interest, the same shall be paid directly by the State Board of Equalization to the cross-complainants herein.'' Judgment was entered accordingly. This was not a judgment in favor of defendants and cross-complainants against the plaintiff and cross-defendants. It having been established at the trial that the defendants had paid the tax after the action was commenced, they obviously would have been entitled to any refund of their own money. The action was one for declaratory relief, and the refund of the tax, under the circumstances, could have been accomplished under the prayer for general relief sought in the complaint without the necessity of such relief being sought in a cross-complaint. Furthermore, plaintiff never made claim to any refund of the tax. On the contrary, on June 5, 1959, prior to the filing of the cross-complaint, he executed and delivered to defendants an assignment of all amounts payable as a refund of such tax. Under the foregoing circumstances, the trial court properly denied defendants' and cross-complainants' prayer for special damages

based upon their claim for reasonable attorneys' fees. The judgment was not in favor of defendants and cross-complainants within the purview of Code of Civil Procedure, section 1032, and they were therefore not entitled to costs.

The judgment is affirmed.

Shinn, P. J., and Ford, J., concurred.